TIA Q. NGUYEN (SBN 338778)
*tia.nguyen@us.dlapiper.com*
**DLA PIPER LLP (US)**
555 Mission Street Suite 2400
San Francisco, California 94105-2933
Tel.: 415.836.2500

BRIAN H. BENJET*
*brian.benjet@us.dlapiper.com*
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 94105-2933
Tel.: 215.656.3311

RAJ N. SHAH*
*raj.shah@us.dlapiper.com*
ERIC M. ROBERTS*
*eric.roberts@us.dlapiper.com*
ZOE S. LEVINE*
*zoe.levine@us.dlapiper.com*
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel.: 312.368.2167

*Admitted *pro hac vice*

*Attorneys for Defendant*
XANDR INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

MARISSA PORCUNA and GENA ALEXANDER, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

XANDR INC., a Delaware corporation,

Defendant.

Case No.: 3:25-cv-07385-WHO

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Date: March 20, 2026
Time: 2:00 p.m.
Room: Courtroom 2 – 17th Floor
Judge: Judge William H. Orrick

Complaint Filed: September 2, 2025
Amended Complaint Filed: February 6, 2026

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiffs Fail to State a Claim Under CIPA or ECPA. .......... 2

1. Plaintiffs do not allege the interception of any communications, or the contents of any communications. .......... 2

2. Plaintiffs do not plausibly allege any interception "in transit." .......... 5

B. Plaintiffs' ECPA Claim Is Barred by the One-Party Consent Rule. .......... 5

1. Plaintiffs admit the facts constituting consent under ECPA. .......... 5

2. Plaintiffs do not plausibly allege the crime-tort exception. .......... 6

C. Plaintiffs Fail to State Invasion of Privacy or Intrusion Upon Seclusion Claims. .......... 10

1. Plaintiffs have not alleged any reasonable expectation of privacy. .......... 10

2. Xandr's routine commercial data collection practices do not amount to a "highly offensive" intrusion. .......... 12

D. The Plaintiff-Specific Allegations Fail to Plead Any Individual Claim for Relief under Federal Rule 8 and the *Twombly*/*Iqbal* Standard. .......... 14

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5, 9

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 5

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ... 7

*Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub. Emp't Relations Bd.*,
35 Cal. 4th 1072 (2005) ... 3

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ... 15

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 15

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ... 1, 3, 4

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ... 6

*Doe v. Regents of University of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ... 15

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ... 11

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ... 3, 12

*In re Google Inc.*,
2013 WL 5423918, at *1 (N.D. Cal. Sept. 26, 2013) ... 3

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ... 12, 13

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025) ... 4, 13, 14

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 1, 12, 14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 13

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ........ 3

*Katz-Lacabe v. Oracle Am., Inc.*,
Case No. 3:22-cv-04792-RS (ECF 87) ........ 12

*Krzyzek v. OpenX Technologies, Inc.*,
--- F. Supp. 3d ---, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ........ 3, 11

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ........ 4

*McClain v. County of San Bernadino*,
2020 WL 1988261 (C.D. Cal. Mar. 5, 2020) ........ 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 4, 7

*Nguyen v. Stephens Institute*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ........ 6

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 10

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 3

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 11

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ........ 9

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ........ 12

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 4, 13, 15

*Thomas v. Papa Johns International, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 10

*Tsering v. Meta Platforms*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 12, 14

*Vargas-Ramos v. Specialized Loan Serv. LLC*,
2022 WL 18397505 (C.D. Cal. Sept. 21, 2022) ... 14

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ... 5

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ... 7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ... 5

**Statutes**

Cal. Civ. Code § 1798.100 ... 3

California Consumer Privacy Act ... 1

**Other Authorities**

28 C.F.R. § 202 ... 7

28 C.F.R. § 202(M) ... 8

28 C.F.R. § 202.256(b)(8) ... 8

28 C.F.R. § 202.301 ... 8

28 C.F.R. § 211 ... 8

28 C.F.R. § 214(b)(5) ... 8

Cal. Prop. 24 (2020) § 2(I) ... 1, 11

U.S. Ct. of App. 9th Cir. Rule 36-3 ... 3

**I. INTRODUCTION**

Throughout the Opposition, Plaintiffs attempt to fill gaps in their FAC by inviting the Court to ask questions and speculate. But this is not the Court's role, and the lack of well-pleaded facts should result in dismissal. As a starting point, Xandr engages in well-understood, lawful activity, and the FAC's allegations are not to the contrary. Plaintiffs do not dispute that both websites alleged in the FAC have judicially noticeable privacy policies advising users of the challenged conduct. *See* ECF No. 28-1. They also do not dispute that internet users understand online advertising is ubiquitous. *See Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Nor do Plaintiffs respond to the fact that online advertising exchanges like Xandr's support the free internet and are embraced by the California Consumer Privacy Act. *See* Cal. Prop. 24 (2020) § 2(I). Courts have held that Plaintiffs' legal theories improperly pigeonhole "data analytics for web traffic" into inapplicable privacy frameworks. *See Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109, 1112, 1119 (N.D. Cal. 2025) ("[C]ourts should not contort themselves to fit the type of conduct alleged in this case into the language of a 1967 criminal statute about wiretapping."). In sum, the FAC does not state a claim for relief under CIPA, ECPA, or the California constitution or common law. This case should proceed no further.

The Opposition fails in multiple ways to rebut Xandr's arguments. *First*, Plaintiffs still cannot point to well-pleaded facts that Xandr intercepted the *contents* of their *communications* while *in transit*, as required for their wiretapping claims. Parroting the phrase "full-string URL" is not enough. A URL is an internet address. Standing alone, a webpage's URL generally locates that webpage without identifying an individual or the contents of any communication. Plaintiffs do not, and cannot, plead that Xandr intercepted any communication in transit. The CIPA and ECPA claims should be dismissed.

*Second*, Plaintiffs concede "the publishers of the websites . . . took steps to install Xandr's code and connect to its platform." Opp. 11. This constitutes consent of a party and is fatal to the ECPA claim. The Opposition's invitation to question if website publishers fully understood what they installed is conjectural, not a well-pleaded fact. Plaintiffs offer no basis for asserting that website publishers are somehow ignorant about their own actions. They also fail to support their

attempt to overcome the website publishers' consent based on the crime-tort exception and the Bulk Data Transfer Rule. The FAC does not plead a violation of the Rule and, contrary to the Opposition, it is a "stretch" for Plaintiffs to equate "billions of touchpoints" throughout Xandr's entire exchange with any amount of data "passed to Temu," a particular entity. Opp. 13. Plaintiffs do not (and cannot) sufficiently plead Xandr transmitted Porcuna's (and at least 99,999 others') data to a "covered person" under the Rule (which must be a foreign entity rather than a U.S. entity). Rather, Plaintiffs attempt to blur entities they acknowledge are distinct ("PDD Holdings" and an entity they refer to only as "Temu's U.S. operations," *see* FAC ¶ 88), Opp. 14, despite the availability of public information negating any need for (and refuting) such speculation. The FAC does not allege well-pleaded facts that Xandr sent qualifying bulk data to a *foreign* entity as opposed to "U.S. operations." For all of these additional reasons, the Court should dismiss the ECPA claim.

Plaintiffs' intrusion upon seclusion and invasion of privacy claims fail because they do not (and cannot) allege a reasonable expectation of privacy or a highly offensive intrusion. The Opposition borrows from other cases involving different facts, such as cases in which a misrepresentation lulled users into a false sense of security. The FAC lacks well-pleaded facts that Xandr engaged in such conduct or collected and disclosed *these Plaintiffs'* sensitive personal information. Unlike the Opposition's cases, Plaintiffs do not allege they visited secure patient portals or websites through which they input their own personal information. Instead, they allege visits to two public-facing health information websites that can be visited by anyone regardless of health status. These allegations do not sustain a claim for relief.

Plaintiffs offer no way to cure any of these defects. The Court should dismiss with prejudice.

## II. ARGUMENT

### A. Plaintiffs Fail to State a Claim Under CIPA or ECPA.

#### 1. Plaintiffs do not allege the interception of any communications, or the contents of any communications.

The FAC fails to plead multiple required elements of a wiretapping claim, including that Xandr intercepted the *contents* of a *communication* while *in transit*. *See* Mot. 10–13. These required elements are not merely words to parrot, especially under a criminal statute. Plaintiffs are

attempting to bring general "web browsing" activities under the umbrella of CIPA and ECPA. *See* Opp. at 6 n.3.[1] The information generated while a visitor browses a website—even one that provides publicly available health information—"is worlds different from wiretapping and eavesdropping." *Doe*, 806 F. Supp. 3d at 1119. The Opposition offers no support for its baseline assumption that the mere existence of online advertising exchanges violates CIPA or ECPA, because that is not the law.[2] The CCPA both authorizes and supplies a legal framework for the conduct alleged in the FAC. Cal. Civ. Code § 1798.100 *et seq.* Plaintiffs do not allege any violation of the CCPA, and the Court should avoid interpreting outdated, inapplicable laws to prohibit conduct expressly permitted by the CCPA. *See Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub. Emp't Relations Bd.*, 35 Cal. 4th 1072, 1089 (2005) ("[W]e construe every statute with reference to the whole system of law of which it is a part, so that all may be harmonized and anomalies avoided.").

Plaintiffs do not plead the facts or do the legwork necessary to fit within the case law they string cite. Merely inserting the word "full" before URLs does not substitute for the required facts. Opp. 8 ("full URLs of the specific pages they were viewing"). As a result, there is a fundamental mismatch between the cases cited and the facts alleged in the FAC that cannot be bridged by Plaintiffs' selection of two public websites with health-sounding names. *E.g.*, *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) (alleging interception of "full-string URLs" that included the plaintiffs' search queries); *Krzyzek v. OpenX Technologies, Inc.*, --- F. Supp. 3d ---, 2026 WL 206855, at *6 (N.D. Cal. Jan. 27, 2026) (same); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (same). Xandr denies that any URLs are communications, and Plaintiffs even concede that some URLs are not communications. Opp. 7 (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014)). Plaintiffs have failed to properly allege "what

[1] Plaintiffs imply that Xandr's arguments are foreclosed by "precedent." Opp. 6 n.3. But the cases they cite are not "precedent," nor are they analogous. *See* U.S. Ct. of App. 9th Cir. Rule 36-3. *Javier v. Assurance IQ, LLC*, is a non-precedential memorandum disposition involving the interception of private answers to an insurance questionnaire. 2022 WL 1744107, at *1 (9th Cir. May 31, 2022). *In re Google Inc.* was about the alleged interception of emails. 2013 WL 5423918, at *1 (N.D. Cal. Sept. 26, 2013). Here, there are no "communications" involved.

[2] Plaintiffs argue that there is no "ambiguity" or "uncertainty" to be resolved in CIPA. Opp. at 6 n.2. The Court has found otherwise. As Judge Chhabria wrote, "[t]he language of CIPA is a total mess," and "we have reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute." *Doe*, 806 F. Supp. 3d at 1112 (applying the rule of lenity and granting summary judgment).

[they] searched," how the search constituted a communication, and what the defendant captured (through a URL or otherwise). *See Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025); *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *10 (E.D. Cal. June 9, 2025) (dismissing CIPA claim where "Plaintiff's complaint [did] not specify or describe the searches Plaintiff conducted on the Website."). Instead, the FAC refers to "basic" or "address" information, such as public URLs that may include a title. *See* FAC ¶¶ 131–42. That a webpage's public address (URL) may reflect its "medical topics and support content," Opp. 8, does not convert the address into content. Plaintiffs' generic references to URLs, without more, fail to "plausibly allege that [Xandr] intercepted the contents of their communications." *Lewis*, 2025 WL 3687546, at *12.

Plaintiffs' arguments are misguided for another reason. Both diabetesforum.com and healthline.com are "general health information" websites "accessible to the public at large." Mot. 24 (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017)). They are not patient portals that provide access and insight into a patient's private medical history. This case is, therefore, worlds apart from *In re Meta Pixel Healthcare Litig.* cited by Plaintiffs. 647 F. Supp. 3d 778 (N.D. Cal. 2022). There, unlike here, the plaintiffs "navigat[ed] to a patient portal on a healthcare provider's website" and supplied their own sensitive information. *Id.* at 793. Plaintiffs here do not allege they inserted personal health information to access diabetesforum.com or healthline.com, or that these websites limited access to visitors with specific health conditions. After all, "[a]n internet user might research medical information for reasons unrelated to the user's own health conditions." *Harrill*, 2025 WL 1635428, at *4. Visiting diabetesforum.com does not implicate private health information, *Smith*, 262 F. Supp. 3d at 954–55, a fact Plaintiffs ironically confirmed through their comfort in publicizing in the FAC that they went to these websites.

In the end, the Opposition leaves the Court with little more than a request for a blanket rule that the URLs with health-sounding names such as diabetesforum.com or healthline.com are protected communications under CIPA and ECPA. Neither statute says anything of the sort. *Doe*, 806 F. Supp. 3d at 1112, 1119 ("[I]t's virtually impossible to apply [wiretapping statutes] to the online world."). Plaintiffs do not plead any facts to bring their case within concerns implicated by viable CIPA or ECPA claims, and their claims should be dismissed.

**2. Plaintiffs do not plausibly allege any interception "in transit."**

The wiretapping claims independently fail because the FAC does not plausibly allege that Xandr intercepted any communication "in transit." *See* Mot. 11–13. This is a matter of logic, common sense, and judicial experience, all of which are proper considerations on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Ninth Circuit discussed "the exchange of information between computers" over the internet in its *Zynga* decision, a discussion reflecting that the alleged collection of a URL happens *after* the website receives it. *See* 750 F.3d at 1101–02. Plaintiffs contend that the Court should disregard *Zynga*—as well as principles of common sense—to let them conduct discovery into whether the "mechanism" at issue here somehow works differently, because that is what other courts have done when faced with CIPA and ECPA claims.[3] Opp. 10. However, Plaintiffs' desire to launch into speculative discovery is not an excuse for failing to satisfy the required "specificity in pleading," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007), including "when [Xandr] supposedly intercepted their communications." *See also In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("[C]onclusory allegation[s]" are insufficient to satisfy the "in transit" element). "While Plaintiffs need not *prove* their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe [Xandr] intercepts their communications." *Id.* at 1228 (emphasis added). Leaping to discovery under the suggestion that the internet somehow works differently for Plaintiffs does not substitute for factual allegations. Plaintiffs offer no such facts for the "in-transit" requirement, and their failure is an independent basis for dismissing the CIPA and ECPA claims.

**B. Plaintiffs' ECPA Claim Is Barred by the One-Party Consent Rule.**

**1. Plaintiffs admit the facts constituting consent under ECPA.**

Plaintiffs "acknowledge that publishers of the websites" choose "to install Xandr's code," Opp. 11—their ECPA claim thus fails based on the one-party consent rule. *See* Mot. 13–14 (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) and *Katz-Lacabe v. Oracle Am.*,

[3] Plaintiffs assert that these issues are more appropriate for summary judgment. Opp. 10. But the stage of a lawsuit does not change how the internet works, and these cases reflect a need to scrutinize whether a complaint actually pleads *facts* supporting the "in-transit" element, or whether a plaintiff relies on speculation and conclusions. The FAC here falls into the latter category, as it fails to explain how Xandr obtains any communication before the website.

*Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023)). Plaintiffs argue that consent is a defense under ECPA, so it is "unsuitable for resolution at the motion to dismiss stage." Opp. 11. But they miss the point because the Court may dismiss where the facts supporting the defense are undisputed, "appear[] on the face of the complaint," or are reflected in judicially noticeable materials. *Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021). Facing a dilemma, Plaintiffs attempt to pivot and raise a question of whether the website operators understood the "full scope" of Xandr's alleged interceptions. Opp. 11–12. However, the FAC alleges no fact that would call the website operators' consent into doubt, and the Opposition's belated, fact-free speculation regarding third parties' knowledge cannot salvage the ECPA claim.

Here, as elsewhere, the Opposition rests on a case against a different company involving different facts. Opp. 11 (citing *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023)). In the *Meta Platforms* case, the plaintiffs allegedly "logged into their patient portal on their medical provider's website" and input their own health information, which the defendant collected despite making representations that it would not. *Id.* at 1074. Specifically, the plaintiffs alleged that Meta "disclosed its purported attempts to prevent third-party developers who incorporated the Pixel from sending sensitive data to Meta" but "in fact intended to receive and did receive that sensitive data." *Id.* at 1078. By contrast, Plaintiffs did not log into any website, did not provide sensitive health information, and have not alleged any deceptive conduct through which Xandr lulled website operators into using Xandr technology based on false privacy assurances. Indeed, the judicially noticeable privacy policies of healthline.com and diabetesforum.com further reinforce the websites' understanding of the use of tracking technology and confirms there was no deception as to the existence of tracking technology or its use for advertising. Mot. 20. In sum, this case is nothing like the *Meta Platforms* case, and there are ample grounds to dismiss the claims against Xandr based on the website operators' affirmative choice to use Xandr's technology.

**2. Plaintiffs do not plausibly allege the crime-tort exception.**

Plaintiffs cannot invoke the crime-tort exception because they do not plausibly allege Xandr's *purpose* was to commit a criminal or tortious act, much less that it actually engaged in such an act. Mot. 15–17 (citing *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal.

2025)). The Opposition unsuccessfully attempts to fill these gaps. But Plaintiffs still fail to support their allegations with requisite factual allegations when seeking to assert criminal or tortious act. Plaintiffs ignore the seriousness of baselessly asserting criminal conduct as they have done in the FAC. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) (holding that Rule 11 imposes the obligation on a lawyer to adequately investigate the factual foundation of the complaint).

As to Xandr's purpose, the FAC explicitly alleges Xandr's "advertising, analytics, and related commercial purposes." FAC ¶¶ 1, 157, 160. The Opposition likewise concedes Xandr's underlying "commercial" purpose. Opp. 16. Plaintiffs nonetheless argue that Xandr's purpose was "to facilitate some further impropriety." *Id.* This argument is not supported by any facts. As explained in the *Meta Pixel* decision—one heavily cited by Plaintiffs—"[m]ultiple courts . . . have found that the crime-tort exception . . . is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." 647 F. Supp. 3d at 797. Thus, "[m]ore is needed" than mere conclusory allegations that "the purpose of the interception was to perpetuate a crime or tort." *Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026) (dismissing ECPA claim where "[p]laintiffs seem to acknowledge that '[d]efendant specifically used the tracking technology provided by Google to track and utilize [p]laintiff's and Class members' PII for financial gain' rather than for the purpose of committing a crime or tort."). Here, the allegations all lead to a single conclusion: Xandr operated an advertising exchange and provided supporting technology to websites, all of which is legal. The FAC does not plead any criminal or tortious purpose that supersedes operating this legal advertising exchange, so the crime-tort exception is inapplicable.

As to the existence of criminal or tortious conduct, Plaintiffs do not plausibly allege any crime or tort. *First*, they fail to allege any violation of the Bulk Data Transfer Rule, 28 C.F.R. Part 202. At the threshold, Plaintiffs do not dispute they lack authority to interpret or enforce the Rule, as that authority is vested in the U.S. Attorney General. *See* Mot. 6, 15–16.[4] Plaintiffs also do not

[4] Plaintiffs also attempt to apply the rule to an alleged transfer that occurred in June 2025, which is outside of the period of enforcement by the DOJ. *See* Mot. at 7, 16. Xandr did not "overstate[]" this grace period, and Plaintiffs themselves acknowledge that the Attorney General announced it "would 'not prioritize civil enforcement actions'" prior to July 2025. Opp. 15.

dispute that the U.S. Attorney General has not designated Temu—the alleged recipient of data from Xandr—a prohibited counterparty under the Bulk Data Transfer Rule. They nonetheless argue that their self-serving math calculations mean Xandr must have impermissibly transferred "protected identifiers of more than 100,000 consumers" to Temu, a "Chinese e-commerce platform," through a "specific Temu endpoint" (https://temu.com/api/adx/cm/pixel-xandr). Opp. 13 (citing FAC ¶ 198). They then misstate the parties' burdens and mischaracterize Xandr's argument about whether Temu is a "covered person" under the Rule as an "affirmative defense." *Id.* at 13. They are wrong. The existence of a "covered person" counterparty to a prohibited transaction is a central element for proving any violation of the Bulk Data Transfer Rule.[5] *See* 28 C.F.R. § 202.301.

An entity cannot be a "covered person" unless it is organized under or headquartered in a "country of concern" such as China, neither of which Plaintiffs allege, or both (1) organized under foreign law and (2) "50% or more owned" by "one or more countries of concern" or other "covered persons." 28 C.F.R. § 211; *see also* 28 C.F.R. § 202.256(b)(8) (stating that a U.S. subsidiary of a foreign parent company is a "U.S. person regardless of the degree of ownership"). As a corollary, a transaction that is between two U.S. persons generally is not a prohibited transaction. *See* 28 C.F.R. § 214(b)(5) (stating that a "U.S. company's provision of" data to a "U.S. advertising exchange would not be a transaction" within the Rule "because it is between U.S. persons").

Plaintiffs' Opposition focuses exclusively on the ownership and control requirement, contending that the company to which Xandr allegedly transferred data is "under the influence and control of the Chinese government" and/or "operated and controlled by PDD Holdings Inc., a Chinese company." Opp. 13–14. However, that is not the test, and the Opposition cannot plead that the company allegedly receiving the data from Xandr is foreign and fails to identify any well-pleaded facts regarding the place of incorporation of Temu's "U.S. operations" (much less that these "U.S. operations" are foreign). FAC ¶ 88. This is a pleading failure, not a defense.

[5] The Bulk Data Transfer Rule imposes a rigorous enforcement process that the U.S. Attorney General must follow, including issuance of notice that includes "a description of the alleged violation" and a "right to respond." *See* 28 C.F.R. Part 202, Subpart M. Plaintiffs do not allege that any such notice has been issued to Xandr, or that they followed (or could follow) this process. Here, too, Plaintiffs' attempt to usurp the Attorney General's enforcement authority is plainly problematic as it does not afford Xandr the full protections written into the Rule itself.

Xandr presumes that Plaintiffs are reticent to tackle this issue headfirst by alleging well-pleaded facts, as opposed to conclusory labels, because judicially noticeable, public facts demonstrate that Temu's U.S. operations are a company called "Whaleco" that is incorporated in the United States. Mot. 17. Whaleco is not, and cannot be, a "covered person" under the Bulk Data Transfer Rule. Plaintiffs presumably understand as much because this fact appears in the sources they cite. For example, the website behind the "endpoint" Plaintiffs refer to in the FAC and Opposition ("temu.com") has a "Whaleco Inc." copyright in the footer. The "Looking Beyond TikTok" article cited in the Opposition (Opp. 14) distinguishes Temu from "the China-focused Pinduoduo" and from another separate company, "PDD Holdings." Plaintiffs do not, and cannot, comply with *their* obligation to conduct a proper pre-suit investigation by "invit[ing] . . . question[s]" in the Opposition. It is obvious from both the FAC and the Opposition that Plaintiffs cannot factually plead a violation of the Bulk Data Transfer Rule under Rule 11.

The FAC also fails to supply well-pleaded facts that any data Xandr transmitted to "Temu" satisfied the definition "bulk U.S. sensitive personal data." Mot. 17. Plaintiffs acknowledge that the "bulk" definition at issue is 100,000 individuals' "covered personal identifiers." Opp. 13. They contend their allegations as to the "scale and reach of Xandr's platform" suffice to plead such a transaction. *Id.* Regardless of Xandr's scope, the claim advanced here requires Plaintiffs to allege facts regarding the number of times Xandr transmitted data specifically to the "temu.com" endpoint alleged in the FAC. *See* FAC ¶ 198. Plaintiffs do not allege any person other than Porcuna who encountered the "endpoint," or any website other than diabetesforum.com where they believe this "endpoint" was used. In other words, Plaintiffs impermissibly extrapolate from one to 100,000 and "stop[] short of the line between possibility and plausibility." *Ashcroft*, 556 U.S. at 678.

*Second*, Plaintiffs also cannot rely on their other claims to establish the crime-tort exception because (as demonstrated elsewhere herein and in Xandr's Motion) Plaintiffs fail to adequately plead any such claims. Plaintiffs do not dispute that dismissal of their other claims would defeat their attempt to rely on those claims to establish the crime-tort exception under ECPA. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025) (dismissing ECPA claims predicated on California privacy violations where "the Court has already

found that Plaintiff failed to sufficiently state [those other] claim[s]").

For each of these reasons, Plaintiffs fail to invoke the crime-tort exception under ECPA, and the website operators' consent to use Xandr's technology requires dismissal of the ECPA claim.

**C. Plaintiffs Fail to State Invasion of Privacy or Intrusion Upon Seclusion Claims.**

**1. Plaintiffs have not alleged any reasonable expectation of privacy.**

Plaintiffs' California common law and constitutional privacy claims each require Plaintiffs to plead and prove a reasonable expectation for privacy with respect to a legally protected privacy interest. Mot. 18–20. Plaintiffs do not (and cannot) dispute that there can be no reasonable expectation of privacy in connection with "routine, everyday browsing behavior" on the internet. Opp. 17. Instead, they attempt to get around this fact by painting Xandr's conduct as "going far beyond standard website analytics." *Id.* Each of their efforts fail.

First, Xandr is not "unknown and undisclosed," nor does it "covertly operate in the background." Opp. 17. Plaintiffs themselves acknowledge that Xandr openly details information regarding its technology capabilities and "privacy policies"—indeed, they extensively cite to such disclosures throughout the FAC. *See* Opp. 21; FAC fns. 2, 8, 9–13, 15–18, 20–21, 24–26, 28–31, 36, 41. They also do not dispute that "the policies on the websites" they visited disclosed the use of third-party tracking technology for advertising purposes (as permitted by the CCPA). *See* Opp. 21; Nguyen Decl. Exs. A–D. Instead, Plaintiffs argue that "these 'disclosures have no effect on [Plaintiffs'] reasonable expectations of privacy' when they did not know they existed." Opp. 21. That Plaintiffs may have unreasonably chosen to disregard the websites' public privacy notices is of no moment and makes their expectations inherently unreasonable. Moreover, "given the inherent nature of the internet," courts emphasize that *reasonable users* "recognize, if only intuitively, that our data has to be going somewhere. And indeed it does, feeding an entire system of trackers, cookies, and algorithms designed to capture and monetize the information we generate." *Thomas v. Papa Johns International, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (dismissing invasion of privacy and intrusion upon seclusion claims); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 266 (3d Cir. 2016).

Second, Plaintiffs erroneously assert that "aggregat[ing] information" somehow makes

Xandr unique and makes its conduct "antithetical to the values espoused by California law." Opp. 2. This cannot be squared with the CCPA. In voting for Proposition 24 (now embodied in the CCPA), California voters acknowledged that "advertising businesses . . . track [consumers] across the internet, and . . . create detailed profiles of their individual interests." Cal. Prop. 24 (2020) § 2(I). Far from rejecting the commercial aggregation of information for advertising profiles, California law explicitly allows companies to engage in such behavior. Plaintiffs are suggesting that somehow combining three alleged lawful sources of information (website, third party, and alleged first party) somehow makes it illegal. The alleged specter of lawful advertising profiles cannot serve as a basis to sustain Plaintiffs' claims. Plaintiffs' reliance on *Facebook Tracking* and other cases involving "pervasive data collection practices" for the notion that "individuals have a reasonable expectation of privacy in aggregated information" is misplaced. *See* Opp. 17–18.

In *Facebook Tracking*, the "relevant question" was "whether a user would reasonably expect that Facebook would have access to the user's individual data *after the user logged out of the application*." *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 602 (9th Cir. 2020) (emphasis added). The Ninth Circuit emphasized that "the critical fact" in cases where courts find a reasonable expectation of privacy associated with the tracking of browsing histories "was that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." *Id.* at 603.

No such facts are alleged here. Plaintiffs argue that "misrepresentations are [not] required to establish a reasonable expectation of privacy." Opp. 18–19. However, whether through affirmative misrepresentation or other deceptive lulling, the plain reasoning in the *Facebook Tracking* decision requires something more than the mere aggregation of data. The remaining cases Plaintiffs cite are distinguishable because they involved allegations (not present here) that the defendants collected detailed personal and sensitive information. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1082 (N.D. Cal. 2025) ("name, postal address history, [] phone numbers," and "information on specific [medical] conditions and medications"); *Krzyzek*, 2026 WL 206855, at *1, *4 ("email addresses and other personal identifiers" used to track plaintiff while "she navigated through the [Covered California] website . . . to apply for health insurance");

*Semien v. PubMatic Inc.*, 2026 WL 216333, at *1, *2 (N.D. Cal. Jan. 27, 2026) ("age, credit risk, yearly household income, affluence level, field of study," "makes and models of vehicles owned, types of preferred food, specific products purchased at the supermarket, language spoken at home, when last career change occurred, and levels of investable assets"); *Katz-Lacabe v. Oracle Am., Inc.*, Case No. 3:22-cv-04792-RS (ECF 87) ("physical locations" including "the specific type of bank and branch," "hundreds of . . . credit card purchases," "SKUs for specific products," all associated with plaintiff's "name, email addresses, physical address, and phone numbers"); *Gilligan*, 2026 WL 32259, at *2 (compilation of "detailed profiles of each Plaintiff's online web browsing activity *tied to their email address and other personal identifiers*") (emphasis added).

Here, by contrast, the only information Plaintiffs allege Xandr collected from *them* are pseudonymous (*i.e.*, not tied to their personal identities) "cookie IDs, device IDs, IP addresses, [] browser metadata" and URLs of the public-facing websites they visited. FAC ¶¶ 7, 132, 142. "[T]he collection of users' data, including by tracking users across the internet" is mere "routine behavior" that "reasonable user[s] should expect" as part of "[c]ontemporary internet browsing." *Hubbard*, 2024 WL 3302066, at *7, *8. Plaintiffs' theory that Xandr makes inferences about a website visitor fails to establish any invasion of privacy. Because Plaintiffs do not allege any reasonable expectation of privacy over the information Xandr purportedly collected, their California privacy claims should be dismissed.

**2. Xandr's routine commercial data collection practices do not amount to a "highly offensive" intrusion.**

The FAC also fails to allege well-pleaded facts or a cognizable basis for concluding that Xandr's conduct was "highly offensive." Mot. 21–23. Plaintiffs respond, incorrectly, that any determination as to the offensiveness is premature. Opp. 23. Again, the Opposition seeks to shift Plaintiffs' burden, despite ample case law dismissing claims "arising from the collection and disclosure of personal data" for a failure to "'sufficiently allege that Defendants did more than engage in such routine behavior'—*i.e.*, that they engaged in 'secret or deceptive data collection.'" *Tsering v. Meta Platforms*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026) (quoting *Hubbard*, 2024 WL 3302066, at *7); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal.

2022) (dismissing privacy claims because "Plaintiffs do not allege that the data allegedly collected by Google is sufficiently specific or personal, and its collection sufficiently harmful, to be highly offensive"). The Court can and should assess the sufficiency of Plaintiffs' allegations to determine whether they have plausibly pled any "highly offensive" intrusion. They have not.

As an overarching matter, there is nothing "highly offensive" about the collection of pseudonymous information associated with Plaintiffs' browsing of publicly available websites. Plaintiffs try to embellish their allegations by framing diabetesforum.com and healthline.com as "health-specific websites reflecting chronic illnesses," Opp. 22, but as in *Smith*, "[t]hese pages contain general health information that is accessible to the public at large." 262 F. Supp. 3d at 955. Using public websites "for routine medical searches and inquiries" "do[es] not rise to the level of an 'egregious breach of the social norms' that is 'highly offensive.'" *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024). This is because "the collection and transmission of information from unauthenticated webpages (*i.e.*, pages that do not require a user to log in to access the website) is only actionable where the information disclosed either (1) demonstrates that the plaintiff's interactions plausibly relate to the provision of healthcare, or (2) connects a particular user to a particular healthcare provider or otherwise identifies patient status, which is protected health information." *Harrill*, 2025 WL 1635428, at *4 (quotation marks omitted). Neither of these conditions are present here, and Plaintiffs do not argue otherwise.

Plaintiffs' additional arguments also fail to establish any "highly offensive" intrusion. They assert their browsing data was used "in connection with identity-resolution partners that stripped away any pseudonymity," Opp. 22, but "[e]ven disclosure of highly personal information such as social security numbers is not 'highly offensive.'" *Hammerling*, 615 F. Supp. 3d at 1090; *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (holding that the disclosure to third parties of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy). The alleged disclosure of aggregated information to third parties for advertising purposes is even less offensive and cannot rise to the level of "highly offensive" conduct. *See, e.g.*, *Hammerling*, 615 F. Supp. 3d at 1090 ("data collection and disclosure to third parties that is 'routine commercial behavior' is not 'highly

offensive'"); *Tsering*, 2026 WL 89320, at *7 (same); *Hubbard*, 2024 WL 3302066, at *7 (same).

Finally, because "social norms" are relevant in determining whether conduct is "highly offensive," Plaintiffs' theory cannot be squared with the actions of the California voters or the Legislature in passing Proposition 24 and the CCPA, which expressly permit data collection for online advertising purposes. Accordingly, Plaintiffs' invasion of privacy and intrusion upon seclusion claims should be dismissed.

**D. The Plaintiff-Specific Allegations Fail to Plead Any Individual Claim for Relief under Federal Rule 8 and the *Twombly*/*Iqbal* Standard.**

As an independent matter, Plaintiffs fail to plead a viable claim for relief because they do not allege specific facts as to what (if any) and how their own private information was purportedly unlawfully collected or transmitted. *See* Mot. 23–25. This is not, as Plaintiffs assert, a "catch-all" or "kitchen-sink" argument. *See* Opp. 23–24. Federal Rule 8 is the most fundamental pleading rule, and the failure to comply with it "constitutes an independent basis for dismissal of a complaint." *McClain v. County of San Bernadino*, 2020 WL 1988261, at *5 (C.D. Cal. Mar. 5, 2020).

The Opposition confirms that Porcuna's claims arise entirely from her visit to diabetesforum.com and Alexander's claims arise entirely from her visit to healthline.com. Opp. 23. In both instances, the claims revolve around the subsequent alleged collection of "full URL" information that supposedly "revealed sensitive health-related topics." *Id.* This is fundamentally deficient, as "Plaintiff[s] do[] not identify with specificity what information [they] provided to [Xandr] via [their] browsing activity on the Website[s]." *Harrill*, 2025 WL 1635428, at *4. Vague allegations suggesting that Plaintiffs "used the Website[s] to search for information related to 'actual or potential' health conditions" do not suffice, as "[a]n internet user might research medical information for reasons unrelated to the user's own health conditions." *Id.* Although "Porcuna's diabetes"[6] may have been a reason for her to visit diabetesforum.com, Opp. 24, there is no allegation that Porcuna disclosed her diagnosis when visiting the website or that the website limits visitors to those who have diabetes. This is entirely different than a patient portal tied to patient

[6] The FAC does not allege that either Plaintiff has been diagnosed with diabetes or any other specific condition. The Opposition is not a proper place to introduce new facts. *Vargas-Ramos v. Specialized Loan Serv. LLC*, 2022 WL 18397505, at *4 (C.D. Cal. Sept. 21, 2022).

diagnoses, prescriptions, or messages with a medical provider. Visitors to the diabetesforum.com website may or may not have diabetes and may have countless reasons for visiting the website. Plaintiffs simply do not allege that any information on the diabetesforum.com or healthline.com websites relates specifically to their personal health. *See Smith*, 262 F. Supp. 3d at 954 (finding that "Facebook did not collect 'protected health information'" because "[n]othing about [the information on public health websites] relate[d] specifically to Plaintiffs' health").

Plaintiffs also rely on *Doe v. Regents of University of California*, but that case is distinguishable because it involved allegations regarding the tracking of information shared through "an online patient portal" where "patients can message their health care providers, refill prescriptions, pay bills, and view appointment information." 672 F. Supp. 3d 813, 815 (N.D. Cal. 2023) (Orrick, J.). The Court rejected the argument that the plaintiff needed to "provide more specific medical details," finding that allegations that the plaintiff "entered medical information, including information relating to her heart issues and high blood pressure, into the patient portal" to be sufficient. *Id.* at 819. The FAC makes none of these allegations, and the Opposition does not aver that such allegations would be forthcoming if Plaintiffs were permitted to amend the complaint a second time. Instead, the apt analogies for Plaintiffs' claims are *Doe I v. Google LLC* and *Cousin v. Sharp Healthcare*, since the FAC improperly relies on generalized and hypothetical allegations that do not adequately plead claims about the named plaintiffs themselves. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 838 (N.D. Cal. 2024) (dismissing complaint where the plaintiffs failed to provide any "details about their investigation, nor do they explain how they have determined that their private health information has been intercepted by Google"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing complaint premised on "overarching theory . . . that Defendant collected patients' personal and sensitive medical information" where "Plaintiffs fail to factually explain their personal participation in any of this"). Because the Plaintiff-specific allegations fall far short of satisfying Rule 8, each of Plaintiffs' claims must be dismissed.

## III. CONCLUSION

For the foregoing reasons, Xandr respectfully requests that the Court dismiss Plaintiffs' FAC, and every cause of action stated therein, in its entirety.

Dated: May 1, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ TIA Q. NGUYEN*

TIA Q. NGUYEN (SBN 338778)
*tia.nguyen@us.dlapiper.com*
**DLA PIPER LLP (US)**
555 Mission Street Suite 2400
San Francisco, California 94105-2933
Tel.: 415.836.2500

*Attorneys for Defendant*